**In the Matter of Richard Gregory KELLEY, Debtor.**

**Bankruptcy No. B82–1697–Y.**

United States Bankruptcy Court, N.D. Ohio.

June 30, 1983.

Albert Strobel, Youngstown, Ohio, for debtor.

Frederick S. Coombs III, Youngstown, Ohio, for objecting creditor Mahoning Nat. Bank.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Bankruptcy Judge.

Debtor is before the court seeking confirmation of a Chapter 13 plan of arrangement in which he proposes a 25% payment to unsecured claimants. Mahoning National Bank, the holder of an unsecured claim in the amount of $5,093.42, has challenged the adequacy of debtor's proposal in light of 11 U.S.C. § 1325(a)(4), which requires debtor to pay unsecured claims an amount not less than would be received if his assets were liquidated in a Chapter 7 proceeding.

In his petition, debtor has listed $69,-846.78 in secured debt, $21,356.57 in unsecured debt and assets with an estimated fair market value of $77,300.00. When

debtor's exemption rights are taken into consideration, it would appear that debtor's plan would easily meet the liquidation test of Section 1325(a)(4). However, the nub of this controversy is an unscheduled interest in a profit-sharing plan and trust. Debtor asserts that his interest, while vested, has no present value and could not be reached by a Chapter 7 trustee, whereas Mahoning National Bank (hereinafter referred to as Mahoning) argues that debtor's interest in the plan has a present value of approximately $55,000.00 which becomes property of the estate under 11 U.S.C. § 541(a).

## I

Debtor is a participant in a profit-sharing plan maintained by his employer of the past twenty-six years. Employer's funding of the plan is left to the discretion of its board of directors, which is free to make annual contributions from employer's accumulated earnings and profits for that year. (Plan, Section 5.1) While neither party has supplied the court with an exact figure representing total contributions on debtor's account, it is clear that debtor has a fully vested interest in all such contributions by virtue of this continuous service with employer for more than twelve years from the effective date of the plan. (Plan, Section 7.1)

The plan further contains the following provision with respect to assignment of benefits:

> *Spendthrift Clause:* The right of any Participant or beneficiary to any benefit or to any payment hereunder or to any account shall not be subject to alienation or assignment.

Plan, Section 14.2.

## II

■ Debtor argues that he has an inchoate interest in the above described profit-sharing plan which is dependent upon the fulfillment of one of three contingencies, namely that he work for employer until he reaches age sixty-five, that he work for employer until he becomes totally disabled, or that he work for employer until death.

This assertion is without merit when one considers Section 7.1 of the plan, which clearly provides for total vesting of employer contributions based upon debtor's years of service with employer. It is true that debtor's right to receive future contributions will be dependent upon his continued employment, but this is not to be confused with the vested status of paid-in employer contributions.

As debtor has a vested interest in those contributions previously made to the plan on his account, the questions remaining for disposition are whether such interest becomes property of the estate and, if so, whether debtor has a right of exemption with respect to the contributions in question.

## A

It has been recognized that most types of pension and profit-sharing plans are within the pervasive reach of 11 U.S.C. § 541(a)(1). *See, e.g., In re Hinshaw,* 23 B.R. 233, 9 B.C.D. 769, 7 C.B.C.2d 323 (D.Kan.1982); *In re Threewitt,* 20 B.R. 434, 9 B.C.D. 38, 6 C.B.C.2d 903 (D.Kan.1982); *but see In re Haynes,* 679 F.2d 718 (7th Cir.1982) (exception for military retirement pay).

The question posed in this action is whether the restrictions imposed under Section 14.2 of the plan are within the protection of 11 U.S.C. § 541(c)(2), which provides:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

As a tax-qualified trust under the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), Section 401(a)(13) of the Internal Revenue Code mandates the inclusion of a restriction such as the one contained in Section 14.2 of the plan.

Several courts have held that Section 541(c)(2) has no application to restrictions on assignment imposed pursuant to ERISA requirements. *See, e.g., Regan v. Ross,* 691

F.2d 81 (2d Cir.1982); *In re Threewitt, supra; but see In re Wood,* 23 B.R. 552, 9 B.C.D. 935 (E.D.Tenn.1982).

The rationale behind this determination is twofold. First, it appears from the legislative history that Section 541(c)(2) is limited in its application to true spendthrift trusts, as distinguished from ERISA-type trusts. *See id.; see also* House Report No. 95–595, 95th Cong., 1st Sess. (1977) 369, U.S.Code Cong. & Admin.News 1978, p. 5787; 4 *Collier on Bankruptcy* para. 541.23 (15th ed. 1982).

Secondly, a construction of Section 541(c)(2) which excludes a debtor's interest in an ERISA-type trust from property of the estate would render the federal exemption contained in 11 U.S.C. § 522(d)(10)(E)(iii) meaningless. *See Regan v. Ross, supra; In re Threewitt, supra.* As that section provides a federal exemption for a debtor's interest in trusts such as the one in question, it is clear that Congress intended such an interest to become property of the estate. Indeed, one of the major changes effectuated by the present Bankruptcy Code is that all of debtor's property comes into the estate initially, including that which may be thereafter exempted. *See* House Report No. 95–595, 95th Cong., 1st Sess. (1977) 368.

This court approves the reasoning of the *Regan* and *Threewitt* cases, and it is therefore unnecessary to resolve what appears to be a conflict under Ohio law on the question of enforceability of spendthrift trust provisions. *Compare Martin v. Martin,* 54 Ohio St.2d 101, 374 N.E.2d 1384 (1978) *with Sherrow v. Brookover,* 174 Ohio St. 310, 189 N.E.2d 90 (1963).

## B

■ Notwithstanding the above conclusion that debtor's interest in the plan is an asset of the estate, Mahoning's objection to confirmation is still subject to the challenge that debtor's interest is wholly or partially exempt, as the liquidation test of Section 1325(a)(4) requires the court to value only non-exempt assets in making its determination. 5 *Collier on Bankruptcy* para. 1325.-01[2][D][b][iv] (15th ed. 1982).

Only the Ohio exemption statute needs to be considered, as Ohio has exercised its option not to follow the federal scheme of exemptions. *See* Revised Code Section 2329.662. The state statutory language provides in relevant part:

Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:

\* \* \* \* \* \*

The person's right to receive a payment under any pension, annuity, or similar plan or contract, *not including a payment from a stock bonus or profit sharing plan* \* \* \* on account of illness, disability, death, age, or length of service, to the extent necessary for the support of the person and any of his dependents \* \* \*.

Revised Code Section 2329.66(A)(10)(b) (emphasis added).

The court is of the opinion that the subject plan is not within the exemption quoted immediately above because it is a profit-sharing plan which is excluded by the underscored language. It is of some significance to note that the plan is denominated as a profit sharing device, but, even more importantly, the discretionary funding provisions of Section 5.1 of the plan compel this conclusion. Debtor acknowledges in his brief that the plan is not a defined benefit plan, and it is therefore a defined contribution plan for purposes of ERISA. *See* 26 U.S.C. § 414(i)–(j). In distinguishing between pension plans and profit-sharing plans, this dichotomy is crucial, as a pension plan is an example of a defined benefit plan (where the participant receives a definite or fixed monthly income upon retirement), whereas a profit-sharing plan is one type of defined contribution plan (where the participant's ultimate benefits are dependent upon employer's discretionary contributions to the plan on account of the participant). *See generally* M. Canan, Qualified Retirement Plans §§ 3.11 and 3.51 (1977).

## III

The failure of either party to provide the court with exact figures relative to the present value of debtor's interest in the plan impedes a precise "liquidation test" calculation along the lines of Section 1325(a)(4). However, as it appears without dispute that debtor's interest is of substantial value and has not been included in the schedules which debtor has filed with the court, it cannot be said at this juncture that the criterion of Section 1325(a)(4) has been met.

Accordingly, an order shall issue herewith sustaining the objection to confirmation raised by Mahoning and ordering debtor to amend his schedules to reflect his trust interest as property of the estate. Upon amendment of the schedules, debtor will be free to take further action with respect to confirmation of a plan of arrangement which is not inconsistent with the terms of this memorandum.