**In re Barbara Marie PAYNE, Debtor.**

**Estate of Dean Short, Appellant,**

v.

**Barbara Marie Payne; Charles E. Sims, Chapter 7 Trustee, Appellees.**

**BAP No. NC–04–1102–MaSP.**
**Bankruptcy No. 03–12246.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Nov. 17, 2004.

Filed March 30, 2005.

Michael C. Fallon, Santa Rosa, CA, for Estate of Dean Short.

George A. Weinkauf, Nelson & Weinkauf, San Rafael, CA, for Barbara Marie Payne.

Before MARLAR, SMITH and PERRIS, Bankruptcy Judges.

## OPINION

MARLAR, Bankruptcy Judge.

### INTRODUCTION

Before us is the bankruptcy court's order allowing the debtor's claimed exemption in a guaranteed minimum annuity with a life contingency feature as "life insurance." An objecting creditor, joined by the chapter 7 trustee, maintained that the annuity was merely an investment and therefore did not qualify as life insurance under the relevant California exemption statute. The bankruptcy court determined that both parties to the annuity contract had assumed risks and that such risks qualified the annuity as exempt life insurance.

We hold that, while risk is one characteristic of life insurance, the bankruptcy court applied an incorrect legal standard in that it failed to consider other relevant factors, including the primary purpose of the annuity, in making a determination as to whether it was exempt life insurance. Therefore we reverse the bankruptcy court's order, and remand for application of the correct legal standard.

### FACTS

Debtor filed a voluntary chapter 7 [1] petition on September 16, 2003. At the time, she was 78 years old, single and lived in a mobile home park in Novato, California.

Debtor's largest scheduled debt was an unsecured personal loan debt of $139,773 owing to the Estate of Dean F. Short ("the Estate").

Included in Debtor's monthly income was an annuity payment of $1,032.70. Debtor claimed a full exemption in the annuity as a "matured life insurance policy," as that term is defined in California Civil Procedure Code ("Cal.Civ.Proc. Code") § 704.100(c). In 2002, at age 77, Debtor had purchased the single-premium annuity for $125,000 from Cova Financial Life Insurance Company, a/k/a MetLife Investors Insurance Company ("MetLife").

The Estate, joined by the chapter 7 trustee filed a timely objection to the claimed exemption on the grounds that the

---

1. Unless otherwise indicated, chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

annuity did not qualify as life insurance. They conceded, however, that the annuity was necessary for Debtor's support.

Debtor responded that the annuity was a life insurance policy, and declared that its purpose was to provide support for herself as well as death benefits for a relative.[2]

The detailed terms of the annuity were as follows. Debtor applied on a "single premium immediate annuity" form. The policy cover page stated, on the top line: "Single Premium Annuity Contract." But, farther down on the page, it read: "YOU HAVE PURCHASED A LIFE INSURANCE POLICY." The contract schedule page described the plan as a "life annuity with period certain." Under "Income Options," the checked box was entitled "Life Income With 10 Years Guaranteed"—an option "with a life contingency."

Thus, the annuity was a "period certain guaranteed minimum" annuity. *See Moffat v. Habberbush (In re Moffat)*, 119 B.R. 201, 204 n. 4 (9th Cir. BAP 1990), *aff'd*, 959 F.2d 740 (9th Cir.1992). *See also Cal. Ins. Law & Prac.* § 20.21[2][b] (Matthew Bender 2004).[3] The guaranteed ten-year payments of $123,924 ($1,032.70 × 120 months) were slightly less than the $125,000 single premium payment.

After a hearing on the exemption objections, the bankruptcy court issued a decision that the annuity qualified as life insurance because the total payments were contingent on Debtor living beyond the ten years. The court opined:

> [Debtor] bet MetLife . . . that she would live more than ten years. If she does so, she wins her bet and MetLife must pay her more than she paid for the annuity. If she dies in less than ten years, MetLife wins the bet and enjoys the interest-free use of the remaining balance of [Debtor's] premium. There is no doubt that calculating the odds of this bet involved complex considerations including both interest rate factors and actuarial tables to determine the probability that [Debtor] would live more than ten years.

Memorandum Decision (February 6, 2004), at 2.

The order overruling the objection to exemption was entered on February 13, 2004, and was timely appealed by the Estate.

### ISSUE

The sole issue is whether the period certain guaranteed minimum annuity, un-

2. Alternatively, Debtor requested leave from the court to file an amended claim to exempt the annuity as a private retirement plan under Cal.Civ.Proc.Code § 704.115. The bankruptcy court did not resolve this issue and we do not need to address it. Debtor did not file an amended exemption claim under Cal.Civ. Proc.Code § 704.115, nor did she either cross-appeal or argue the issue in her appellee's brief. Therefore, Debtor has waived this alternative claim for purposes of this appeal. *See Law Offices of Neil Vincent Wake v. Sedona Inst. (In re Sedona Inst.)*, 220 B.R. 74, 76 (9th Cir. BAP 1998) (an issue not briefed is deemed waived).

3. This treatise defines a period certain guaranteed minimum annuity as follows:

> Period certain annuities guaranty that the payment will be continued for a minimum period of time (typically 10 or 20 years). If the annuitant dies prior to the expiration of the minimum period, the payments are continued to the beneficiary of the annuitant until the expiration of the minimum period. If, on the other hand, the annuitant survives the expiration of the minimum period, the annuitant continues to receive the payment but the beneficiary receives nothing. Period certain annuities cost somewhat more than straight life annuities, the difference being a function of the period certain compared to the remaining life expectancy of the annuitant when the benefits commence.
> *Cal. Ins. Law & Prac., supra,* § 20.21[2][b].

der which Debtor will receive monthly payments for the longer of ten years or her lifetime, but in either event no less than approximately what she paid for the annuity,[4] is exempt life insurance pursuant to Cal.Civ.Proc.Code § 704.100(c).

### STANDARD OF REVIEW

■ Whether the correct legal standard was applied is an issue of law which is subject to de novo review. *Anastas v. Am. Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1283 (9th Cir.1996).

■ The scope of an exemption under California law is a legal question which we review de novo. *Sticka v. Casserino (In re Casserino)*, 290 B.R. 735, 737 (9th Cir. BAP 2003), *aff'd*, 379 F.3d 1069 (9th Cir. 2004). Contract interpretation is also a question of law, which we review de novo. *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1064 (9th Cir.2002); *Smyth v. USAA Prop. & Cas. Ins. Co.*, 5 Cal. App.4th 1470, 1474, 7 Cal.Rptr.2d 694, 696 (1992) (interpretation of an insurance policy, like any other contract, is a matter of law).

■ Whether an annuity is exempt life insurance under the California exemption statute is a factual determination which we review under the clearly erroneous standard. *See Turner v. Marshack (In re Turner)*, 186 B.R. 108, 117 (9th Cir. BAP 1995) (determination of whether an annuity is exempt life insurance requires a factual analysis); *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 782 (9th Cir.1999) (factual findings are reviewed for clear error).

### DISCUSSION

### *Exemption Law and Annuities*

■ California has opted out of the federal exemption scheme; therefore we apply California exemption law. *See* 11 U.S.C. § 522(b)(1); Cal.Civ.Proc.Code § 703.130. The California exemption statutes are liberally construed, for their manifest purpose is to protect income and property needed for the subsistence of the judgment debtor. *See Turner*, 186 B.R. at 113.

California's exemption law for "Life Insurance Policies" provides, in pertinent part:

> Benefits from matured[5] life insurance policies (including endowment and annuity policies) are exempt to the extent reasonably necessary for the support of the judgment debtor and the spouse and dependents of the judgment debtor.

Cal.Civ.Proc.Code § 704.100(c).

The parties have already agreed that the annuity was necessary for the support of Debtor. The open question is whether a period certain guaranteed minimum annuity, *i.e.*, one which continues for the longer of a specified number of years or the annuitant's life, qualifies as life insurance under Cal.Civ.Proc.Code § 704.100(c). This is a matter of first impression in our circuit.

■ The Ninth Circuit has held that Cal.Civ.Proc.Code § 704.100(c)'s parenthetical reference to "endowment and annuity policies" does not create an independent exemption for endowments and annuities in general. Rather, it merely clarifies that life insurance policies that possess significant features of an endow-

---

**4.** The guaranteed payments of $123,924 were slightly less than the $125,000, but slightly exceeded the *net* premium after taxes ($125,-000 minus 2.35% state tax = $122,062.50).

**5.** Undisputedly, the immediate annuity "matured" on its effective date, July 12, 2002. *See Moffat*, 119 B.R. at 204–05.

ment or annuity will not lose their exempt character. *See Kennedy v. Pikush (In re Pikush)*, 157 B.R. 155, 157 (9th Cir. BAP 1993), *aff'd*, 27 F.3d 386 (9th Cir.1994). An example would be a life insurance policy that provides for the beneficiary's receipt of payments in the form of an annuity, rather than a lump sum, upon the death of the insured. *Id.* at 157–58.

■ In California, life insurance is defined as " 'a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event' " where "the contingent or the unknown event is mortality." *Pikush*, 157 B.R. at 156, quoting California Insurance Code ("Cal.Ins. Code") § 22. Its purpose has been described as follows:

> The basic purpose of life insurance is to address the risks associated with human mortality. Life insurance serves not only a protective function, but also, with certain types of policies, a savings function. In its protective function, life insurance provides funds for estate purposes, income for family members after the death of the insured, and special needs such as the payment of a mortgage.[ ] In its savings function, certain types of life insurance products allow individuals to accumulate savings[ ] and provide the policyholder with the ability to borrow against those savings or to obtain the cash surrender value of the policy. The various types of life insurance products emphasize different aspects of the protective and savings functions in varying degrees to serve individual needs.

*Cal. Ins. Law & Prac., supra,* § 20.01[1] (footnotes omitted).

■ "An annuity, by contrast, is a right to receive fixed, periodic payments, either perpetually or for life or a stated period of time. . . . Thus, annuities are more in the nature of investments rather than insurance." *Pikush*, 157 B.R. at 156–57 (citation omitted).

More specifically:

> With an annuity, the person designated as the recipient (the annuitant) is usually the person paying the money. The annuitant pays a fixed sum, in return for which the company must then perform a series of obligations over a period of years, at designated times. The hazard of loss is no longer upon the company, but upon the recipient, who may die before any benefits are received. Instead of creating an immediate estate for benefit of others, the annuitant has reduced the annuitant's immediate estate in favor of future contingent income. Annuity contracts must, therefore, be recognized as investments rather than as insurance.

*Cal. Ins. Law & Prac., supra,* § 20.20[2][a].

*Pikush* concerned three single-premium fixed-term annuities. There, we rejected an argument that the Insurance Code's classification of an annuity as "life insurance," under Cal. Ins.Code § 101, was dispositive evidence of the annuities' exempt status. *Pikush*, 157 B.R. at 158–59. We held that the purpose of the Insurance Code's classification system is the licensing and regulation of insurance and annuities and has "no bearing on the interpretation of California's exemption laws." *Id.* at 159. We concluded that the annuities were not exempt as life insurance under Cal.Civ.Proc.Code § 704.100(c), because they involved "no risks, contingencies or unknown events," *id.*, and the Ninth Circuit affirmed the decision.

In *Bernard v. Coyne (In re Bernard)*, 40 F.3d 1028 (9th Cir.1994), *cert. denied*, 514 U.S. 1065, 115 S.Ct. 1695, 131 L.Ed.2d 559 (1995), the Ninth Circuit again affirmed

the principle that an annuity was not exempt life insurance because it provided "a guaranteed stream of income over the term of the contract" but "no contingencies that can divest the [debtors] of their right to receive payment . . . ." *Id.* at 1032.

Both *Pikush* and *Bernard* involved annuity policies with guaranteed fixed-term payouts and no contingencies. In *Pikush,* the terms were five and ten years; *Bernard* did not address the terms, except to indicate that the annuity was comparable to those in *Pikush.* However, apparently, neither policy contained a life contingency or lifetime payout.

In *Turner,* in contrast, the debtor sought to exempt an unmatured annuity policy under which he would receive a monthly payment for life commencing upon his 60th birthday. Before remanding the case for additional factfinding, we suggested that "there is some stretching room [under *Pikush* and *Bernard* ] for [annuities] that would be life insurance" because they "appertain to human life (life annuities)." *Turner,* 186 B.R. at 117. We noted that insurance policies and annuities are both used for investment purposes and that "there is an intimate relationship between life insurance and annuities" in a practical sense. *Id.* at 115 n. 10 (citation omitted). Finally, *Turner* pointed out that the example given in *Pikush* of a life insurance annuity did not exclude the possibility that an annuity involving "risks, contingencies, or unknown events" could be exempt because it is the functional equivalent of life insurance. *See Pikush,* 157 B.R. at 159; *Turner,* 186 B.R. at 115.

The authorities agree that "annuities and life insurance have much in common." *Cal. Ins. Law & Prac., supra,* § 20.20[2][b]. As with life insurance, the uncertainty facing the annuitant is the length of his or her life. However, the risks are typically different. "With an annuity, the risk insured is that death will be postponed; with life insurance, the risk insured is that death will be premature." *Id.* In addition, the two are considered alike for some purposes, such as licensing, regulation, or taxes, and innovative policies may combine the characteristics of both to appeal to a sophisticated market, as insurers compete with financial institutions in noninsurance activities. *Id.* and § 3A.05[3].

■■■■ *Turner* recognized the complexity of determining whether an annuity is an investment or life insurance and held that it involves a factual analysis on a case-by-case basis.[6] *Turner,* 186 B.R. at 117. In making that determination, the court should consider a number of factors, including:

> 1) Is the annuity truly contingent; 2) Can [the debtor] accelerate the maturity date; 3) May [the debtor] borrow against the policy; 4) Who owns the policy; 5) Was the payment of the premium consistent with an investment or a payment; 6) Was [the issuer of the annuity] licensed to sell life insurance in California; 7) What was the opinion of the experts; 8) What provisions of the application are also part of the policy; and 9) Must life insurance in California

**6.** The suggestion in *Turner* that whether or not the annuity was purchased as part of prebankruptcy planning is factually relevant, *see Turner,* 186 B.R. at 116–17, is questionable in view of the subsequent Ninth Circuit opinion holding that prepetition conversion of nonexempt property to exempt property, without

more, is not fraudulent. *See Gill v. Stern (In re Stern),* 345 F.3d 1036, 1044 (9th Cir.2003) (conversion of nonexempt assets into exempt assets is nonfraudulent "as a matter of law") (citation omitted), *cert. denied,* 541 U.S. 936, 124 S.Ct. 1657, 158 L.Ed.2d 356 (2004).

contain a death benefit? [7]

*Id.* (footnote added).

### Application of Law to Debtor's Annuity

██ Contrasting her annuity with those in *Pikush* and *Bernard,* Debtor therefore argued, and the bankruptcy court agreed, that even though her annuity contained guaranteed payments for a fixed ten-year period, it qualified as life insurance since its additional lifetime benefit was contingent on Debtor's life expectancy beyond the ten years.

The Estate countered by arguing that the annuity was merely an investment annuity whereby Debtor paid $125,000 in return for the "right to receive fixed, periodic payments, either perpetually or for life or a stated period of time." *Pikush,* 157 B.R. at 156 (defining an annuity).

To resolve this issue, we first examine the annuity contract, applying the doctrine that "[t]he law respects form less than substance." Cal. Civ.Code § 3528.

The contract, entitled a "Single Premium Annuity Contract," indicated that Debtor had chosen a "life contingency" annuity for "Life Income With 10 Years Guaranteed." The "contract schedule" page referred to the plan as a "life annuity with period certain." The cover sheet, however, also indicated that she was purchasing a "LIFE INSURANCE POLICY." The investment/payout terms indicated that Debtor's initial investment of $125,000 would largely be paid back within ten years (without interest), yielding about $123,924. Thereafter, if she was still living, MetLife would continue the monthly payments until her death.

There was no death benefit per se, nor was there a provision for borrowing against the policy. Debtor had the right to name a new owner and could also assign the contract.

The overall language of the annuity clearly shows that this transaction was a "period certain guaranteed minimum" annuity contract. *See Moffat,* 119 B.R. at 204 n. 4; *Cal. Ins. Law & Prac., supra,* § 20.21[2][b]. Under such terms, MetLife agreed to make payments to Debtor for her lifetime, but if she died prior to the end of the guaranteed ten-year period, the company would make payments to her beneficiary for only the duration of the guaranteed ten-year period. *Id.*

Such an annuity would be considered "life insurance" under the California Insurance Code for purposes of licensing and regulation, and hence the cover page note that it was a "LIFE INSURANCE POLICY." However, that lone designation does not change the *substance* of the contract as an annuity and not life insurance. *See Pikush,* 157 B.R. at 159.

Next, we may consider the California Insurance Code, which provides that "[a]n insurance upon life may be made payable," in relevant part, as follows:

(a) On the death of the insured.

(b) On his surviving a specified period.

(c) Periodically as long as he lives.

(d) Otherwise contingently on the continuance or determination of life.

(e) Upon such terms and conditions and subject to such restrictions as to revocation by the policyholder and control by beneficiaries as shall have been agreed

---

7. Arguably, the ninth factor is meant to examine the risks involved in the transaction in light of the inherent differences between annuities and life insurance. "In a life insurance policy the risk assumed is to pay upon the assured's death; in a pure annuity contract the risk assumed is to pay as long as the assured may live." *Equitable Life Assur. Soc. of United States v. Johnson,* 53 Cal.App.2d 49, 57, 127 P.2d 95, 99 (1942).

to in writing by the insurer and the policyholder. . . .

Cal. Ins.Code § 10170.

The annuity provided a contingent payout similar to an insurance policy under options (c) or (d). However, only if Debtor lived beyond ten years and beyond age 87 would she realize a return beyond her investment/premium.

The bankruptcy court ruled that there was a mutual risk in this arrangement and stated that "[t]here is no doubt that calculating the odds of this bet involved complex considerations including both interest rate factors and actuarial tables to determine the probability that [Debtor] would live more than ten years." Memorandum Decision, *supra*, at 2.

However, the bankruptcy court did not consider all of the *Turner* factors. Both the court and counsel treated the question as one of law, and apparently focused solely on whether there was any risk at all. Because there was some risk, the court concluded that the annuity qualified as life insurance. As *Turner* recognized, there is more to the analysis than simply risk, and the court should have taken into consideration other factors besides risk.

Where the annuity contains some attributes of insurance and some of investment, consideration of the fifth *Turner* factor must include a determination of the primary purpose of the annuity. If the primary purpose is investment, then the annuity would not qualify as life insurance for purposes of the exemption statute.

This is similar to the analysis of exemption of IRAs under Cal.Civ.Proc.Code § 704.115(a)(3), where, if an IRA has dual purposes, the court considers whether the principal purpose is to provide for retirement or to provide for current needs. *See Dudley v. Anderson (In re Dudley)*, 249 F.3d 1170, 1176–77 (9th Cir.2001).

Here, although technically a lifetime annuity with some risk, Debtor's annuity would repay her or her beneficiary the consideration which she paid out after ten years, when she would be 87 years old. Therefore, on remand, the bankruptcy court should examine whether the annuity was primarily an agreement to indemnify Debtor in the event of a contingency or merely a convenient way of making an investment.

█ Finally, Debtor urges a liberal application of the exemption laws in her favor in order to protect her necessary level of subsistence. While a debtor's financial circumstances are an important consideration, a court cannot rewrite California exemption law to accommodate debtors who might fail in their attempt to convert nonexempt assets into exempt assets.

### CONCLUSION

An annuity may be exempt life insurance under California law if it primarily contains attributes of life insurance. That determination is a factual one, to be made on a case-by-case basis. Here, the bankruptcy court concluded that the risks assumed by the debtor and the issuer established that the annuity was life insurance, but the court did not examine other relevant factors, such as those set forth in *Turner*, or whether the primary purpose of the annuity was for investment or life insurance. Therefore, we REVERSE the order allowing Debtor's exemption, and REMAND for application of the correct legal standard.